**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOSEPH DALE ROBERTSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-3427 |
| | § | |
| WAL-MART STORES, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Wal-Mart sells many things. It is not surprising that it is sued over things that are not usually the stuff of federal cases.[1] This case is an example. It arises from a single bag of potato chips.

Joseph Dale Robertson sued Wal-Mart Stores, Inc. in Texas state court, alleging false arrest and false imprisonment. Wal-Mart promptly removed to federal court on the basis of diversity jurisdiction. (Docket Entry No. 1). After discovery, Wal-Mart moved for summary judgment. (Docket Entry No. 15). Robertson responded. (Docket Entry No. 18). Based on careful review of the parties' submissions, the applicable law, and the record, the court grants Wal-Mart's motion for summary judgment and enters final judgment. The reasons are explained below.

**I.     Background**

---

[1] *See, e.g.*, *Farneth v. Wal-Mart Stores, Inc.*, No. 2:13-cv-01052, 2013 U.S. Dist. LEXIS 181020 (W.D. Pa. Dec. 30, 2013) (sales tax of $0.42 on a buy-one-get-one coupon for shaving cream); *Boggs v. Wal-Mart Stores, Inc.*, 2006 Ky. App. Unpub. LEXIS 586, 2006 WL 1045413 (Apr. 21, 2006) (plaintiff stopped in the parking lot for allegedly stealing his own jacket); *Matthew Adam, et al. v. Wal-Mart Stores, Inc.*, No. A1700827 (Hamilton Cty. Ct. of Common Pleas, Feb. 10, 2017) (whether Wal-Mart's "Craft Beer" meets the Brewers Association definition of "craft" brewing); *Mierzwa v. Wal-Mart, Inc.*, 2014 N.J. Super. Unpub. LEXIS 1726 (N.J. Super. Ct. App. Div. July 16, 2014) (inability to purchase "choicest reserved seats" to a Beach Boys concert); *see also* Debra Cassens Weiss, *Consumer Advocate Wins Suit Against Walmart Store for Failing to Correct Two Penny Overcharge*, ABA JOURNAL (Oct. 3, 2011), http://www.abajournal.com/news/article/consumer_advocate_wins_suit_against_walmart_for_failing_to_correct_two_penn/ (two cent overcharge on "Brown 'N Serve" sausages).

In October 2014, Robertson drove to the Wal-Mart Store in The Woodlands, Texas, to pick up a few groceries for dinner that evening and to return a recently opened bag of Wal-Mart brand "Great Value" potato chips. (Docket Entry 15-2 at 13). Robertson's wife had detected an odor when she opened the bag. Robertson wanted a new bag.

The Wal-Mart greeter directed Robertson to the customer-service counter. (Docket Entry No. 15-2 at 13). Robertson asked the customer-service representative to exchange the open bag for a new one, explaining that his wife had complained that the chips smelled bad when she opened the bag. (*Id.*) The Wal-Mart associate asked for the receipt and a driver's license or other government-issued identification. (*Id.*). Robertson said he had neither. Robertson told the associate that both he and his wife had previously returned items, including a swimming pool worth over $200, without having to present a receipt or identification. (Docket Entry No. 15-2 at 12–13). Robertson said that he had no receipt and was not sure whether the chips came from that store or another store. (*Id.* at 14–15). He said that he did not have his driver's license, although he had driven to the store. (*Id.* at 16, 31). Robertson showed the associate a Sam's Club Card and a business card. (Docket Entry No. 15-2 at 16). The associate explained that neither met the store's requirement for an exchange. Robertson asked to speak with a manager. The customer-service associate told him that no manager or assistant manager was available. (*Id.* at 17).

Robertson left the customer-service counter and went to pick up the grocery items he needed. He ran into the same greeter, who encouraged him to return to the customer-service counter and again ask for a manager. (Docket Entry No. 15-2 at 18). Robertson returned to the counter and again asked to exchange the potato chips. He got the same response. He then dropped the bag of chips into the Wal-Mart associate's hands. (Docket Entry No. 15-2 at 21). The associate told

Robertson that a manager was available to speak to him.

Robertson testified that when the manager arrived, Robertson extended his hand, which the manager refused to shake. (Docket Entry No. 15-2 at 21). The manager said to Robertson, "You slapped one of my employees. Get out of my store." (*Id.*). Robertson responded "Excuse me?" The manager again told Robertson to leave the store and warned that if he did not "leave the store, I'm calling the police." (*Id.*). Robertson said: "I would like to ask you to call the police." (*Id.*). Robertson stood at the Wal-Mart customer-service desk while the manager called the police. (*Id.* at 21–22). No one told Robertson to stay or otherwise kept him from leaving. To the contrary, Robertson had been told to leave, twice, and refused.

Robertson testified that he overheard the manager explaining to the police that he was calling from Wal-Mart and that there was "an incident where a customer slapped one of our employees." (Docket Entry No. 15-2 at 22). According to Robertson, he said at the time that the report was a lie and denied having slapped any Wal-Mart employee. (*Id.*).

The parties agree that Robertson voluntarily waited for the ten minutes it took the police to arrive. (Docket Entry No. 15-2 at 21). Two officers responded. One, Officer Beatty, first talked to the manager, but Robertson could not hear them. (Docket Entry No. 15-2 at 22). Officer Beatty asked Robertson to tell him what had happened. Robertson refused to answer. (*Id.* at 23). Instead, he pointed to the security surveillance camera and suggested that the officer watch it. (*Id.*). The parties agree that Officer Beatty then said "uncooperative" to Robertson, told him to turn around, and handcuffed him. (*Id.*). Robertson testified that Beatty spoke to the Wal-Mart customer-service associate and the manager before telling Robertson to turn around and handcuffing him. (*Id.*). Wal-Mart denies this, asserting that the officer handcuffed Robertson immediately after declaring him

"uncooperative." (Docket Entry No. 15 at 8).

Officer Beatty had Robertson sit at the customer-service area with the second officer while Officer Beatty left the area. (Docket Entry No. 15-2 at 23–24). Officer Beatty returned after about 12 minutes and removed the handcuffs. (*Id.* at 25). Officer Beatty told Robertson to wait while he got something from his car. (*Id.* at 26). He returned a few minutes later with a citation for disorderly conduct and a document that he asked Robertson to sign. (*Id.*). Robertson testified that he asked if he could read the document before he signed it, but Officer Beatty responded, "You'll sign it or you're going to jail." (*Id.*). Robertson signed the document—an agreement to stay away from the Wal-Mart—and testified that when he asked for a copy, Officer Beatty refused to provide it. (Docket Entry No. 15-2 at 27). At that point, the parties agree, Officer Beatty told Robertson to leave the store, and he did. (*Id.* at 28). The disorderly-conduct citation was later dismissed. (Docket Entry No. 1-1 at 4; Docket Entry No. 15 at 9).

Robertson wants actual and exemplary damages for Wal-Mart's actions that caused him "to suffer extreme shame and public embarrassment and humiliation," which caused him "great mental anguish." (Docket Entry No. 1-1 at 5–6). Robertson testified that he had problems sleeping and was diagnosed with a "systemic infection" after the incident. (Docket Entry No. 15-2 at 32–34).

Wal-Mart moves for summary judgment on the basis that it did not detain or restrain Robertson. Instead, Robertson voluntarily remained after he was told to leave. It was Robertson who asked Wal-Mart to call the police rather than leave the store. (Docket Entry No. 15 at 9–10).

Wal-Mart argues that the evidence shows that when the police arrived, no Wal-Mart employee told the officers to detain or restrain Robertson. Instead, according to Wal-Mart, Officer Beatty did not handcuff Robertson or issue a citation until after he refused to answer the officer's

questions. (*Id.* at 13–14). Wal-Mart argues that Robertson has no claim against, and is not entitled to the damages he seeks from, Wal-Mart. (*Id.* at 17–20).

Robertson responds that Wal-Mart caused the police to handcuff and detain him by falsely reporting that he had "slapped" a Wal-Mart employee. (Docket Entry No. 18 at 7). The motion, response, and summary judgment evidence are reviewed under the applicable legal standards.

## II. The Legal Standard Standards

### A. Summary Judgment

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by showing an absence of evidence to support the nonmoving party's case. *Fret v. Melton Truck Lines, Inc.*, No. 17-50031, 2017 U.S. App. LEXIS 16912, at *5–6 (5th Cir. Sept. 1, 2017) (citing *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994)). While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not

need to negate the elements of the nonmovant's case. *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (citing *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). A fact is material if "its resolution could affect the outcome of the actions." *Aly v. City of Lake Jackson*, 605 Fed. App'x 260, 262 (5th Cir. 2015) (citing *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Exploration, LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (citation omitted).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Bailey v. E. Baton Rouge Parish Prison*, 663 Fed. App'x 328, 331 (5th Cir. 2016) (quoting *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Jurach v. Safety Vision, LLC*, 642 Fed. App'x 313, 317 (5th Cir. 2016) (quoting *Boudreaux*, 402 F.3d 536, 540 (5th Cir. 2005)). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 866 F.3d 698, 702 (5th Cir. 2017).

### B.  False Imprisonment and False Arrest

Under Texas law, false imprisonment and false arrest have the same elements. *See, e.g.*, *San Antonio v. Dunn*, 796 S.W.2d 258, 262 (Tex. App.—San Antonio 1990, writ denied); *Villegas v.*

*Griffin Indus.*, 975 S.W.2d 745, 754 (Tex. App.—Corpus Christi 1998, pet. denied). "The essential elements of false imprisonment are: (1) willful detention; (2) without consent; and (3) without authority of law." *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). "A detention may be accomplished by violence, by threats, or by any other means that restrains a person from moving from one place to another." *Randall's Food Mkts. v. Johnson*, 891 S.W.2d 640, 644–45 (Tex. 1995). Liability "may extend to anyone who directs, requests, or participates in a detention, including the detention of a private citizen whom the defendant identifies as the perpetrator of a crime." *Villegas*, 975 S.W.2d at 755. "When the alleged detention results from an unlawful arrest, to prove instigation a plaintiff must show that the defendant clearly directed or requested the arrest. As the *Restatement* explains, in the case of an arrest, [instigation] is the equivalent, in words or conduct, of Officer, arrest that man! To hold a third party liable for instigating the detention, then, the act of arrest [must be] made by the officer, not of his or her own volition, but to carry out the request of the defendant." *Rodriguez*, 92 S.W.3d at 507.

"The law is clear that a defendant who summons the police, reports an alleged crime, and identifies the offender, is not liable for any subsequent false imprisonment." *Miller v. Baylor Coll. of Med. Fed. Credit Union*, No. H-09-1332, 2011 WL 677350, at *11 (S.D. Tex. Feb. 16, 2011) (citing *Lewis v. Continental Airlines, Inc.*, 80 F. Supp. 686, 702 (S.D. Tex. 1999)); *see also Darden v. E-Z Mart Stores, Inc.*, No. 2-05-CV-64 (TJW), 2006 WL 163219 (Jan. 20, 2006)). The instigation requirement will not be satisfied if the defendant has merely provided information to the police about a crime or accused another of committing the crime, "so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them." *Rodriguez*, 92 S.W.3d at 508. An inference of instigation "is justified only when a party provides

7

information in its report that it knows is false." *Gipson v. Wal-Mart Stores, Inc.*, No H-08-2307, 2008 WL 4844206, at *7 (S.D. Tex. Nov. 8, 2008) (citing *Rodriguez*, 92 S.W.3d at 507).

**III. Analysis**

The record consists of the pleadings, the attached documents, and Robertson's deposition testimony. (*See* Docket Entry Nos. 15, 18). The parties agree that neither Wal-Mart nor its employee detained or restrained Robertson at any point. The parties agree that Robertson refused to leave when he was repeatedly told to do so. The parties agree that Wal-Mart did not insist on calling the police. Rather, it was Robertson who insisted that the manager call the police after Robertson refused to leave the store. It is undisputed that Wal-Mart did nothing to keep Robertson at the store, to prevent him from leaving, or to restrain his movement. Robertson chose to wait until the police arrived.

Officer Beatty placed Robertson in handcuffs for about 12 minutes. Robertson bases his argument that Wal-Mart "instigated" this detention on his assertion that when the Wal-Mart manager called the police—at Robertson's insistence—the manager told the officer that Robertson had slapped an employee. Robertson denies any slap, although he agrees that he "dropped" the open bag of chips in the employee's hands. (Docket Entry No. 15-2 at 21). The parties agree that before handcuffing Robertson, Officer Beatty "announced the word, 'Uncooperative,'" when Robertson refused to answer his question about what had happened and instead told the officer to watch the security camera footage. (Docket Entry No. 15 at 8; Docket Entry No. 15-2 at 23).

There is no genuine factual dispute material to determining whether Wal-Mart instigated Robertson's arrest. Even assuming that the manager had told the officer that Robertson refused to leave the store when asked and that he had "slapped" an employee, there is no evidence that any

8

Wal-Mart employee asked or directed Officer Beatty to handcuff Robertson. The evidence is that the officer decided to use the handcuffs after Robertson refused to answer questions and told the officer to watch the surveillance tape.

The undisputed evidence is that Wal-Mart called the police for a customer who repeatedly refused to leave the store; that Robertson asked the manager to call the police rather than leave the store; that he voluntarily remained at the store until the police came; and that he was handcuffed for 12 minutes and detained for another few minutes after refusing to answer any of the officer's questions. The instigation requirement necessary to extend liability to Wal-Mart is not met and Wal-Mart is entitled to judgment as a matter of law.

**IV.  Conclusion**

Wal-Mart's motion for summary judgment is granted. (Docket Entry No. 15). Final judgment is entered dismissing Robertson's claims with prejudice.

SIGNED on October 11, 2017 at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge